IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM LAMBERT, an individual; BEVERLY LAMBERT, an individual, <br><br>        Plaintiffs, <br><br>     v. <br><br>CITY OF SANTA ROSA, a chartered city; SANTA ROSA POLICE DEPARTMENT, a police agency; EDWIN F. FLINT, Santa Rosa Police Chief; MATTHEW A. SANCHEZ, individually and as a police officer of the Santa Rosa Police Department; ALISSA JOHNSON, individually and as a police officer of the Santa Rosa Police Department; and DOES 1 to 25, <br><br>        Defendants. <br>_____/ | No. C 05-02931 CW <br><br> ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS AND DENYING IT IN PART |

Defendants move to dismiss several of Plaintiffs' causes of action.  Plaintiffs William and Beverly Lambert oppose this motion but agree to dismiss some claims.  The matter was heard on November 4, 2005.  Having considered all of the papers filed by the parties and oral argument on the motion, Defendants' motion is GRANTED in part and DENIED in part.

                        BACKGROUND

According to Plaintiffs' complaint, on or about March 22, 2004, at approximately 8:04 p.m., Santa Rose police officers, Defendants Matthew Sanchez and Alissa Johnson, responded to a 911 call made by Mrs. Lambert.  Plaintiffs allowed Sanchez and Johnson peaceably to enter their home in Santa Rosa.  Sanchez and Johnson

1  questioned Plaintiffs and their adult son Jon.  Plaintiffs have
2  been married for forty-one years and, before this incident, there
3  had been no incidents of domestic violence.
4      Following a brief discussion, Sanchez and Johnson separated
5  Plaintiffs.  Initially, Johnson accompanied Mr. Lambert into the
6  family room and Sanchez remained with Mrs. Lambert in the adjacent
7  area of the house.  Jon was left alone at the time and was able to
8  see and hear Mr. Lambert's discussion.  After approximately ten or
9  twenty minutes, Sanchez and Johnson switched positions.
10     Sanchez questioned Mr. Lambert for approximately ten minutes,
11 asking him for his date of birth and whether he had been drinking
12 alcohol that evening.  Mr. Lambert informed Sanchez of his age and
13 birth date.  He explained that his wife had a couple of drinks
14 prior to dinner and that he and Jon had not, but that he had
15 consumed one glass of wine with dinner.  Sanchez asked to see Mr.
16 Lambert's driver's license.  Mr. Lambert replied that it was in his
17 wallet in the dining room.  When Mr. Lambert attempted to enter the
18 dining room to retrieve his wallet, Sanchez stood in his path and
19 raised his hand towards Mr. Lambert stating that he did not need to
20 see the driver's license.  Mr. Lambert explained that it was not a
21 problem to get the license for him.  Sanchez then stepped toward
22 Mr. Lambert and ordered him to turn around and put his hands behind
23 his back.  Mr. Lambert replied that if Sanchez was going to
24 handcuff him, he would like to use the bathroom first.  Plaintiffs'
25 bathroom was approximately five feet from where Sanchez and Mr.
26 Lambert were standing.
27     Without warning, Sanchez grabbed Mr. Lambert by the left
28

2

shoulder and spun him around while twisting his left arm behind his back.  Mr. Lambert then renewed his request to use the bathroom and suggested that Sanchez could leave the door open but that he needed to relieve himself.  Sanchez did not respond verbally.  He kicked Mr. Lambert's right leg out from under him, causing Mr. Lambert to fall to the ground and crushing and breaking his right leg. Sanchez then twisted Mr. Lambert's right leg behind him causing him further pain.  Mr. Lambert screamed and pleaded for Sanchez to release his leg.  Sanchez released his leg but stood over Mr. Lambert holding what felt to Mr. Lambert like a gun against his rib cage.  Mr. Lambert believed he was going to be shot and killed. Sanchez was holding a taser pistol and used the taser on Mr. Lambert's right leg.  Mr. Lambert screamed in pain again.  Sanchez then handcuffed Mr. Lambert's hands behind his back and ordered him to stand.  Mr. Lambert was not able to stand on his own and fell to the floor a second time.

During these events, Mrs. Lambert, Jon and Johnson were in the dining room.  Johnson came into the family room after Sanchez pulled Mr. Lambert off the floor.  Johnson entered the family room and assisted Sanchez in lifting Mr. Lambert's upper body off the floor and dragging his lower body, including his broken leg. Sanchez and Johnson then propped Mr. Lambert against a couch with his broken leg under him.  They ignored Mr. Lambert's request to help him remove his broken leg out from under him.

Mr. Lambert again asked if he could use the bathroom; he advised Sanchez and Johnson that he could not get there on his own strength and that he needed help relieving himself.  Sanchez and

3

1 Johnson discussed Mr. Lambert's request during which time Johnson
2 advised Sanchez to remove the handcuffs and allow him to use the
3 bathroom.  Sanchez and Johnson helped Mr. Lambert to the bathroom,
4 which was approximately eight feet away from the couch.  Both
5 Sanchez and Johnson witnessed Mr. Lambert relieve himself.

6 Mr. Lambert does not recall what transpired between the time
7 he was allowed to use the bathroom and the time the paramedics
8 arrived.  Nor does he know who called the paramedics.  Mr. Lambert
9 was taken by ambulance to Kaiser Permanente Hospital.  He was
10 treated in the emergency room for a fractured tibia and his leg was
11 placed in a full brace.  Johnson stayed in the room initially but
12 was replaced by Sanchez.  Sanchez insisted that emergency room
13 staff release Mr. Lambert to him so that he could take him to jail.
14 At no time during these incidents did Defendants read Mr. Lambert
15 his rights, tell him why he was arrested or inform him why Sanchez
16 used force against him.

17 While in the emergency room, Mr. Lambert asked Sanchez for
18 water.  Sanchez responded that he was not a nurse.  Mr. Lambert
19 called a nurse and requested water.  Mr. Lambert also asked Sanchez
20 to call Mrs. Lambert.  But Sanchez refused and stated that Mr.
21 Lambert was under arrest and did not have a right to speak on the
22 phone.

23 Mr. Lambert was released from the emergency room.  His
24 attending physician, in Sanchez' presence, requested that Mr.
25 Lambert not place any weight on his right leg.  Sanchez ordered Mr.
26 Lambert off the examination table and did not allow him to wear a
27 jacket or robe of any kind.  Sanchez forced Mr. Lambert to leave

28

4

1 the hospital on crutches with his gown open in the back exposing
2 Mr. Lambert's underwear.  Mr. Lambert walked approximately seventy-
3 five feet down the sidewalk to the patrol car.  Sanchez did not
4 offer to assist Mr. Lambert or to get a wheelchair.
5     Mr. Lambert arrived at the Sonoma County Jail at approximately
6 11:30 p.m.  Sanchez went into the jail and returned twenty minutes
7 later with a wheelchair.  Sanchez helped Mr. Lambert into the
8 wheelchair.  While in the jail waiting room, another officer told
9 Mr. Lambert that he could watch television and use the telephone to
10 make a call.  Sanchez was no longer with Mr. Lambert.
11     After these events, Sanchez and Johnson falsified their arrest
12 reports.  Mr. Lambert alleges that Defendants City of Santa Rosa,
13 Santa Rosa Police Department and various officials know of
14 Sanchez's use of excessive force, and of Sanchez and Johnson's
15 falsification of their reports.  On or about June 11, 2004, Mr.
16 Lambert submitted a statement to Defendant Santa Rosa concerning
17 the events of March 22, 2004.  On or about June 21, 2004,
18 Lieutenant Zboralske and Sergeant Swartz from Defendant Police
19 Department met Plaintiffs at their home in the presence of
20 Plaintiffs' attorney.  The officers discussed Defendant Police
21 Department's cooperation and public support.  As of March 31, 2005,
22 Plaintiffs did not know if any investigation had been completed.
23     As a result of the injuries Mr. Lambert sustained on March 22,
24 2004, he has undergone surgery on his right leg and may need
25 further surgeries in the future.  Plaintiffs have had to move from
26 their two-story home in Santa Rosa to a smaller single-story home
27 in Cloverdale, California.  They moved because of Mr. Lambert's
28

5

difficulty walking, his period of recuperation following surgery, his loss of income and because they fear additional harm from Defendant Police Department.

During the events of March 22, 2004, Mrs. Lambert was at all times in the adjacent room and heard and/or observed incidents which occurred in the hallway next to the bathroom.  Mrs. Lambert could hear Mr. Lambert's screams.  Following Mr. Lambert's fall to the ground, Mrs. Lambert and her son entered the hallway and witnessed Mr. Lambert in pain.  She also observed as Sanchez and Johnson hauled Mr. Lambert over to the couch.  This caused Mrs. Lambert severe emotional trauma for which she has received treatment and incurred monetary damages, including three months of lost wages.

Plaintiffs' complaint alleged twelve causes of action; however, in their opposition, Plaintiffs voluntarily agreed to dismiss the third, fourth, fifth, sixth, tenth and eleventh causes of action against all Defendants and to dismiss all claims against Defendant Police Chief Edwin Flint.  In addition, Plaintiffs do not intend to pursue the seventh cause of action and, therefore, it is dismissed.  Furthermore, Plaintiffs have clarified that Mrs. Lambert's sole claim is based on loss of consortium (twelfth cause of action) as a result of the assault on Mr. Lambert.  At hearing the parties also agreed that Santa Rosa Police Department was included erroneously as a defendant in that it is not a separate legal entity.  Thus, all claims against the Santa Rosa Police Department are dismissed.

The remaining causes of action brought by Mr. Lambert, as

originally numbered in the complaint, are: (first) violation of 42 U.S.C. § 1983 against Defendants Santa Rosa, and Sanchez and Johnson, individually and in their official capacities; (second) assault and battery against Defendants Santa Rosa, and Sanchez and Johnson, individually and in their official capacities; (eighth) intentional infliction of emotional distress against Defendants Santa Rosa, and Sanchez and Johnson, individually and in their official capacities; (ninth) failure to intervene against Defendant Johnson.  Mrs. Lambert brings the twelfth cause of action for loss of consortium against Defendants Santa Rosa, and Sanchez and Johnson, individually and in their official capacities.

## LEGAL STANDARD

A motion to dismiss for failure to state a claim will be denied unless it is "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Falkowski v. Imation Corp., 309 F.3d 1123, 1132 (9th Cir. 2002) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002)).  All material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  "Each averment of a pleading shall be simple, concise, and direct.  No technical forms of pleading or motions are required." Fed. R. Civ. P. 8(e).  These rules "do not require a claimant to set out in detail the facts upon which he bases his claim.  To the contrary, all the Rules require is 'a short and

7

plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds on which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957).

DISCUSSION

I.   First Cause of Action for Excessive Force Under § 1983

   A.   Municipal Liability

Defendants argue that the complaint must allege facts to establish some affirmative link between Santa Rosa's policies and the deprivation of Mr. Lambert's constitutional rights. Defendants contend, however, that Plaintiffs have plead, in effect, a respondeat superior theory of liability, which is insufficient to establish a claim against a municipality.[1]

A municipality can be found liable under 42 U.S.C. § 1983 only where the municipality itself causes the constitutional violation at issue; respondeat superior or vicarious liability will not attach under section 1983. Monell v. New York Dep't of Social Servs., 436 U.S. 658, 694-95 (1978). Plaintiffs must allege that: (1) Mr. Lambert was deprived of his constitutional rights by Santa Rosa employees acting under color of State law; (2) that Santa Rosa had customs or policies which "'amounted to deliberate indifference' to [his] constitutional rights;" and (3) that these policies were the "'moving force behind the constitutional

---

[1] Defendants' reliance on Branch v. Tunnell, 937 F.2d 1382 (9th Cir. 1991), to support the proposition that Plaintiffs must allege with particularity facts to overcome an official's qualified immunity was improper. Branch was overruled. Galbraith v. County of Santa Clara, 307 F.3d 1119, 1121 (9th Cir. 2002). Thus, Defendants' citation of Branch for this proposition was negligent.

8

violation[s].'" <u>Oviatt v. Pearce</u>, 954 F.2d 1470, 1473, 1477 (9th Cir. 1992) (quoting <u>City of Canton v. Harris</u>, 489 U.S. 378, 389-91 (1989))(alterations in original).

In the Ninth Circuit, such a claim is sufficient to withstand a motion to dismiss "even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice." <u>Galbraith v. County of Santa Clara</u>, 307 F.3d 1119, 1127 (9th Cir. 2002) (quoting <u>Karim-Panahi v. Los Angeles Police Dep't</u>, 839 F.2d 621, 624 (9th Cir. 1988) (quoting <u>Shah v. County of Los Angeles</u>, 797 F.2d 743, 747 (9th Cir. 1986))). Further, acquiescence in a practice or custom is a cognizable claim under <u>Monell</u>. <u>Jett v. Dallas Indep. Sch. Dist.</u>, 491 U.S. 701, 737 (1989). And, a municipality's failure to train or supervise its employees properly can create section 1983 liability where such a failure is "conscious" or "amounts to deliberate indifference to the rights of persons" with whom its employees are likely to come into contact. <u>City of Canton</u>, 489 U.S. at 388-89.

Plaintiffs' complaint is sufficient. It alleges that (1) Mr. Lambert was deprived his constitutional rights; (2) Santa Rosa maintained "a policy, custom, or practice" of excessive force and its policymakers acted with "deliberate indifference" to Mr. Lambert's constitutional rights; and (3) Santa Rosa's policies and practices permitted and encouraged excessive force by its officers. Furthermore, Plaintiffs allege that Santa Rosa's failure "to properly hire, train, supervise or discipline" its officers, demonstrated its "ratification, condonation, and acquiescence in

9

the use of excessive force."  And, the complaint alleges that Santa Rosa's policymakers acted with "actual knowledge, constructive knowledge and/or deliberate indifference" to Mr. Lambert's constitutional rights.

Therefore, Plaintiffs' allegations against Santa Rosa are sufficiently plead to withstand Defendants' motion to dismiss.

B.   Defendant Johnson's Liability

Defendants contend that the complaint fails to allege that Defendant Johnson personally engaged in the use of excessive force. Defendants argue that, because Johnson was in another room during the time Sanchez inflicted the alleged injuries to Mr. Lambert's leg, the section 1983 claim against Johnson should be dismissed. Plaintiffs respond that Johnson failed to prevent Sanchez from using the taser and contributed to the excessive force by dragging Mr. Lambert across the floor.

A police officer may be held liable under section 1983 for failing to intervene if a fellow officer violates the constitutional rights of a suspect.  Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000).  However, officers who are not present or do not have a "realistic opportunity" to intercede cannot be held liable.  Id.

According to the complaint, Johnson was in the dining room when Mr. Lambert's leg was broken in the family room due to Sanchez's alleged use of excessive force.  Because Johnson was in the other room when the initial injury occurred and the complaint does not indicate that she had any warning that Sanchez would use force on Mr. Lambert, she had no realistic opportunity to intervene

10

before Mr. Lambert's leg was broken.  However, Plaintiffs argue that Johnson failed to act to prevent the taser injury to Mr. Lambert after Mr. Lambert's leg was broken and he began screaming and pleading with Sanchez to release his leg.  Whether Johnson can be held liable for a failure to intervene before Sanchez used his taser on Lambert would, therefore, depend on facts such as (1) whether Johnson could hear from the dining room the altercation between Sanchez and Mr. Lambert in the family room; (2) whether what she heard indicated that excessive force had been and would continue to be utilized against Mr. Lambert; and  (3) whether the duration of the altercation allowed Johnson a realistic opportunity to intervene to prevent further injury.  These issues are not appropriately addressed at this stage in the proceedings.

Furthermore, Plaintiffs allege that Johnson's subsequent act of dragging him across the floor while injured constituted excessive force.  The manner in which Mr. Lambert was allegedly dragged through his family room could also establish excessive force, depending on the circumstances of Mr. Lambert's arrest. Taking the allegations in the complaint as true and construing all reasonable inferences in favor of Plaintiffs, the Court cannot hold that Mr. Lambert has not stated a claim of excessive force against Johnson.

Therefore, Defendants' motion to dismiss the first cause of action against Johnson is denied.

C.   Falsification of Police Reports

In their opposition, Plaintiffs argue that the complaint states a valid claim under 42 U.S.C. § 1983 against Defendants

11

Sanchez and Johnson for falsification of police reports. Defendants respond that the complaint does not assert this cause of action.

Defendants correctly observe that the only allegations of falsification of police reports are set forth in the tenth cause of action, which has been voluntarily dismissed, and in the complaint's introductory allegations, which are not incorporated by reference into the other causes of action.  The only remaining section 1983 claim is the first cause of action for excessive force, which does not allege that Defendants Sanchez and Johnson falsified their police reports.

Accordingly, the Court finds that Plaintiffs have failed to state a claim under 42 U.S.C. § 1983 for falsification of police reports.  At the hearing, Plaintiffs declined leave to amend to state such a claim.

II.  Municipal Liability for State Law Claims

Defendants contend that Plaintiffs' State law tort claims against Santa Rosa should be dismissed because Plaintiffs' original claim filed with the City did not allege facts to establish any action or inaction by Santa Rosa or make an independent claim against it.  Plaintiffs argue that their State law causes of action against Santa Rosa arise from the same fundamental facts as set forth in the pre-lawsuit claim.

California "Government Code section 945.4 requires, as a prerequisite to maintenance of an action against a public entity for damages arising out of an alleged tort, the timely filing of a claim, and its rejection." <u>Fall River Joint Unified Sch. Dist. v.</u>

12

Superior Court, 206 Cal. App. 3d 431, 434 (1988).  "[T]he factual circumstances set forth in the written claim must correspond with the facts alleged in the complaint . . . ."  Nelson v. State of California, 139 Cal. App. 3d 72, 79 (1982) (citations omitted). "Where a complaint is 'predicated on the same fundamental facts' as those in the claim, courts have concluded the claim did not violate section 945.4."  Dixon v. City of Livermore, 127 Cal. App. 4th 32, 40 (2005) (quoting White v. Superior Court, 225 Cal. App. 3d 1505, 1511 (1990)) (internal citations omitted).

    Here, Plaintiffs' claim contains the same fundamental facts as alleged in the complaint.  Moreover, Defendants' assertion that there are no independent claims made against Santa Rosa is directly contradicted by the heading of the claim itself -- "William and Beverly Lambert's Claim Against the City of Santa Rosa."  (Caroline Fowler Dec., Ex. C at 2).

    Therefore, the claim satisfied section 945.4 and the Court will not dismiss Plaintiffs' State law tort claims against Santa Rosa.

III. Second Cause of Action for Assault and Battery

    A.   Defendant Johnson's Liability

    Defendants argue that California law precludes Defendant Johnson's liability for assault and battery.  Defendants claim that "a public employee is not liable for an injury caused by the act or omission of another person."  Cal. Gov't Code § 820.8 (2005). Defendants also point to section 820.4, which provides immunity to public officials for conduct carried out "in the execution or enforcement of any law."  Id. at § 820.4.  But section 820.8

13

emphasizes: "Nothing in this section exonerates a public employee from liability for injury proximately caused by his own negligent or wrongful act or omission." Id. at § 820.8. Thus, section 820.4 only immunizes acts or omissions of police exercising "due care." Id. at § 820.4. Consequently, Johnson can be held liable for the alleged unreasonable force she used against Mr. Lambert while dragging him across the family room floor. Moreover, Plaintiffs rely on Robinson v. Solano County, 278 F.3d 1007, 1016 (9th Cir. 2002), holding that police officers who use excessive force in arresting a suspect are not immune from assault and battery under California law.

Therefore, the Court denies Defendants' motion to dismiss the second cause of action against Johnson.

B.   Bane Civil Rights Act Claim

In their opposition papers, Plaintiffs contend that there is a valid cause of action under California law for assault and battery as a violation of California Civil Code section 52.1,[2] popularly known as the Bane Civil Rights Act. Plaintiffs further assert that

---

[2] Section 52.1 states, in relevant part:

(a) If a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state . . .

(b) Any individual . . . may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured . . .

14

this Court has supplemental jurisdiction over this cause of action because Plaintiffs' assault and battery claims are factually related to the section 1983 excessive force claims.

At the hearing, Plaintiffs admitted that the section 52.1 cause of action was poorly plead. Plaintiffs cite section 52.1 only once in their complaint under the heading of jurisdiction and venue, which is not incorporated by reference into any other causes of action. There is no citation to section 52.1 in the second cause of action for assault and battery, or as an independent cause of action.

Accordingly, the Court grants Plaintiffs leave to amend to state a valid cause of action under section 52.1.

IV. Eighth Cause of Action for Intentional Infliction of Emotional Distress

Relying on California law, Defendants assert immunity for Plaintiffs' claim of intentional infliction of emotional distress. Without specifically addressing Defendants' contention, Plaintiffs generally dispute Defendants' immunity.

Under California law, "except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." Cal. Gov't. Code § 815.2(b). Furthermore, "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Id. at § 821.6. California courts have held that such prosecutorial immunity

15

applies to acts by police officers, Johnson v. City of Pacifica, 4 Cal. App. 3d 82, 86 (1970), during the course of an investigation. Baughman v. California, 38 Cal. App. 4th 182, 191-92 (1995).

Here, Sanchez and Johnson responded to a 911 call and initiated an investigation concerning claims of domestic violence. During their investigation, Sanchez and Johnson allegedly caused Mr. Lambert emotional distress. Similarly in Amylou R. v. County of Riverside, 28 Cal. App. 4th 1205 (1994), the plaintiff alleged intentional and negligent infliction of emotional distress caused by law enforcement officers investigating the plaintiff's rape. The court held that section 821.6 barred the plaintiff's claim. Id. at 1214. The immunity applied to the officers and, by operation of section 815.2(b), the County of Riverside. Id.

As in Amylou, Defendants' alleged acts were "incidental" to the investigation of a crime. Id. at 1211. Plaintiffs do not attempt to distinguish Amylou. Therefore, Defendants Santa Rosa, and Sanchez and Johnson are immune from Plaintiffs' eighth cause of action.

V.   Ninth Cause of Action for Failure to Intervene

Defendants argue that Johnson cannot be held liable under California law for her failure to intervene.

To establish the requisite duty for this tort under California common law, a plaintiff must allege "that the officer took affirmative action which contributed to, increased, or changed the risk which would have otherwise existed" or establish "the requisite factors to a finding of special relationship, namely 'detrimental reliance by the plaintiff on the officers' conduct.'"

16

1  Stout v. City of Porterville, 148 Cal. App. 3d 937, 945 (1983)
2  (quoting Williams v. California, 34 Cal. 3d 18, 27-28 (1983)).
3  Nothing in the complaint shows that Johnson took affirmative action
4  which contributed to the risk of Mr. Lambert sustaining an injury
5  from Sanchez nor have Plaintiffs shown any detrimental reliance
6  upon her conduct.
7       Therefore, the Court grants Defendants' motion to dismiss the
8  ninth cause of action.  At the hearing, Plaintiffs indicated that,
9  given the Court's findings, they did not wish leave to amend.
10 VI.  Twelfth Cause of Action for Loss of Consortium
11      Defendants assert that Mrs. Lambert has failed to plead the
12 specific elements of damage that are required to state a claim for
13 loss of consortium.  Plaintiffs argue that, under rules of liberal
14 pleading, the allegations in the complaint are sufficient to put
15 Defendants on notice of this cause of action.
16      Loss of consortium is the "loss of conjugal fellowship and
17 sexual relations" experienced by a person when his or her spouse is
18 injured.  Rodriguez v. Bethlehem Steel Corporation, 12 Cal. 3d 382,
19 385 (1974).  The concept of consortium "embraces such elements as
20 love, companionship, comfort, affection, society, sexual relations
21 . . . moral support . . . and the deprivation of a spouse's
22 physical assistance in operating and maintaining the family home."
23 Ledger v. Tippitt, 164 Cal. App. 3d 625, 633 (1985) (citations
24 omitted).  Loss of consortium can be complete or partial.  Carlson
25 v. Wald, 151 Cal. App. 3d 598, 602 (1984) (citing Rodriguez, 12
26 Cal. 3d at 408)).
27      Defendants rely upon Park v. Standard Chem Way Company, in
28

17

which a California appellate court stated:

> Rodriguez does not stand for the principle that the injury to and the pain and suffering of a negligently injured spouse creates a cause of action for loss of consortium in the other spouse. . . . We think that loss of consortium as defined above means a complete loss of consortium for a definite period of time or a nondeterminable length of time and is not to be confused with the inevitable physical, mental, and emotional damage normally or usually suffered by one spouse when the other has been wrongfully injured.

60 Cal. App. 3d 47, 50 (1976).

This portion of the Park decision has since been described as "colorful dicta," unsupported by the text of Rodriguez, and "not followed by any subsequent California court." Carlson, 151 Cal. App. 3d at 602. There is no requirement under California law that Plaintiffs plead a complete loss of consortium because Rodriguez allows recovery for "*impairment* to the rights of consortium." Id. (citing Rodriguez, 12 Cal. 3d at 409) (emphasis in original).

Because Plaintiffs wish to amend their complaint for other reasons, the Court grants Defendants' motion to dismiss the twelfth cause of action, and grants Mrs. Lambert leave to amend to incorporate the relevant language from Rodriguez and perfect her loss of consortium claim.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED THAT:

1) Defendants' motion to dismiss is DENIED as to the claim of excessive force in the first cause of action against Defendants Santa Rosa, and Sanchez and Johnson.

2) Defendants' motion to dismiss is DENIED as to the assault and battery claim in the second cause of action against Defendant

18

Johnson.

3) Plaintiffs' request for leave to amend is GRANTED to add a claim under California Civil Code section 52.1.

4) Defendants' motion to dismiss is GRANTED without leave to amend as to all claims in the eighth cause of action against Defendants Santa Rosa, and Sanchez and Johnson.

5) Defendants' motion to dismiss is GRANTED as to the failure to intervene claim in the ninth cause of action against Defendant Johnson.

6) Defendants' motion to dismiss is GRANTED as to the loss of consortium claim in the twelfth cause of action against Defendants Santa Rosa, and Sanchez and Johnson.  Plaintiff is GRANTED leave to amend to perfect the loss of consortium claim.

7) Plaintiffs shall file their amended complaint on or before November 11, 2005.  Defendants shall notice any motion to dismiss to be heard at the Case Management Conference.

IT IS SO ORDERED.

Dated: 11/15/05

_____
CLAUDIA WILKEN
United States District Judge